```
 1                IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF NEBRASKA
 2

 3     UNITED STATES OF AMERICA,      )   No. 8:21CR33
                                      )
 4            Plaintiff,               )
                                      )
 5     vs.                            )
                                      )
 6     MITCHEL D. ABRAHAM,            )
                                      )   Omaha, Nebraska
 7            Defendant.               )   October 13, 2021

 8

 9

10              TRANSCRIPT OF SENTENCING PROCEEDINGS
              BEFORE THE HONORABLE BRIAN C. BUESCHER
11                  UNITED STATES DISTRICT JUDGE

12

13                       A-P-P-E-A-R-A-N-C-E-S

14     FOR THE PLAINTIFF:        Mr. Donald J. Kleine
                                 Assistant United States Attorney
15                               1620 Dodge Street
                                 Suite 1400
16                               Omaha, NE 68102-1506

17
       FOR THE DEFENDANT:        Ms. Kelly M. Steenbock
18                               Assistant Federal Public Defender
                                 222 South 15th Street
19                               Suite 300N, One Central Park Plaza
                                 Omaha, NE 68102
20

21     COURT REPORTER:           Ms. Rogene S. Schroder, RDR, CRR
                                 111 South 18th Plaza
22                               Suite 3129
                                 Omaha, NE 68102
23                               (402) 661-7383

24
       Proceedings recorded by mechanical stenography, transcript
25     produced with computer.
```

1          (At 10:40 a.m. on October 13, 2021; with counsel and the
2     defendant present:)
3               THE COURT:  You may be seated.
4          We're on the record in United States of America versus
5     Mitchel Abraham, Case Number 8:21CR33.  This matter comes on
6     for sentencing with respect to Count I of the indictment,
7     transportation of a minor with intent to engage in criminal
8     sexual activity.
9          Counsel, would you please enter your appearances.
10              MR. KLEINE:  Good morning, Your Honor.  For the
11    United States, I'm Don Kleine.
12              MS. STEENBOCK:  Good morning, Judge.  Kelly
13    Steenbock, Assistant Federal Public Defender, on behalf of
14    Mr. Abraham, who is here at counsel table with me today.
15              THE COURT:   It appears there has been a Rule
16    11(c)(1)(C) plea agreement in this case.
17         Do the parties still wish for me to accept the plea
18    agreement?  Mr. Kleine.
19              MR. KLEINE:  Yes, Your Honor.
20              THE COURT:  Ms. Steenbock.
21              MS. STEENBOCK:  Yes, Your Honor.
22              THE COURT:  I would like to hear allocution before I
23    decide whether to accept this agreement.
24         Ms. Steenbock, did you receive the Revised Presentence
25    Investigation Report and the Sentencing Recommendation and have

1    you reviewed those documents with your client?
2                MS. STEENBOCK:  Yes, Your Honor.
3                THE COURT:  Mr. Abraham, did you also receive the
4    Revised Presentence Investigation Report and the Sentencing
5    Recommendation and have you had the opportunity to review those
6    documents?
7                THE DEFENDANT:  Yes, Your Honor.
8                THE COURT:  Mr. Kleine, did you receive and review
9    those same documents?
10               MR. KLEINE:  I have, Your Honor.
11               THE COURT:  I believe there are no objections to the
12   report that require resolution.  Is that correct, Mr. Kleine?
13               MR. KLEINE:  Yes, Your Honor.
14               THE COURT:  Ms. Steenbock.
15               MS. STEENBOCK:  That's correct.
16               THE COURT:  I do adopt the presentence investigation
17   report without change.
18        I will now address the guideline calculations in this
19   matter, although I note this is subject to an 11(c)(1)(C) plea
20   agreement that will impact sentencing in the event that I
21   accept the agreement.
22        The total offense level is 35 and the criminal history
23   category is II.  The guideline custody range is 188 to 255
24   months.  The guideline range for supervised release is five
25   years to life.  The defendant is ineligible for probation.  The

1   fine range is 40,000 to 250,000.  Restitution is mandatory but
2   no request for restitution has been made.  The charged conduct
3   is subject to a JVTA assessment of 5,000 and an AVAA assessment
4   of up to 50,000 and a special assessment of $100 is to be
5   assessed.
6        Have I accurately stated the sentencing guideline
7   provisions, Mr. Kleine?
8            MR. KLEINE:  Yes, Your Honor.
9            THE COURT:  Ms. Steenbock.
10           MS. STEENBOCK:  Judge, I would object to the AVAA
11  assessment at this point and we can discuss it later.  He was
12  not convicted of one of the qualifying offenses.
13           THE COURT:  Okay.  And so, therefore, you're saying
14  the AVAA assessment is not -- you're saying the AVAA is not
15  appropriate in this case because of that?
16           MS. STEENBOCK:  Yes, Your Honor.
17           THE COURT:  Okay.  All right.  That is so noted and
18  we can discuss that during allocution.
19       So have I accurately stated the sentencing guideline
20  provisions but for the -- the objection noted by counsel,
21  Ms. Sosa?
22           MS. STEENBOCK:  Ms. Steenbock.  Yes, Your Honor.
23           THE COURT:  I'm sorry.
24           MS. STEENBOCK:  That's okay.
25           THE COURT:  Ms. Sosa was just in here, sorry.

1    MS. STEENBOCK:  She was just here, yes.
2    THE COURT:  Ms. Steenbock, yes.  Thank you.
3       And Mr. Kleine.
4    MR. KLEINE:  Yes, Your Honor.
5    THE COURT:  All right.  So I will now hear allocution
6    beginning with counsel for the defendant, Ms. Steenbock.
7    MS. STEENBOCK:  Pardon?  I didn't hear you, Your
8    Honor.
9    THE COURT:  I'm sorry.  Now I'll hear allocation
10   [*sic*].
11   MS. STEENBOCK:  Oh, thank you, Your Honor.  May I
12   remove my mask while I speak?
13   THE COURT:  You may, please.
14   MS. STEENBOCK:  Thank you.  Thank you, Judge.
15      I think the Court is interested in how the government and
16   I reached this plea agreement because it is a little off from
17   the guideline calculation.  I'll tell you this investigation
18   started and it was charged as a transportation of a minor.
19   Mr. Abraham does not have a criminal history really to speak
20   of, and so with the offense conduct, including the enhancements
21   that applied, his guideline sentence, as charged, would have
22   been less than the ten-year mandatory minimum.
23      As the investigation unfolded after charging, it came to
24   both of our attention, both myself and the government's
25   attention, that there might have been some photographs that

1   were exchanged between the minor victim and my client.  I
2   believe that he indicated as much when he was interviewed by
3   the police.
4       Mr. Kleine and I talked on several occasions about my
5   client's age, his lack of criminal history, the fact that there
6   was no force or threats used to coerce the victim either with
7   the taking of the photographs or with the transportation to
8   Nebraska.
9       Ultimately we decided to go above the mandatory minimum
10  which would have been otherwise appropriate given the fact that
11  the guideline was below the mandatory minimum but not quite to
12  the 15 years that would have been required by statute if we had
13  required the government to get a superseding indictment
14  charging the exchange of pictures charge.
15      So kind of split the baby, you know?  We're giving away a
16  little bit based on the charge.  The government gave away a
17  little bit to avoid having to go through the forensic efforts
18  of actually investigating the phone.
19      You know from the presentence report that Mr. Abraham has
20  a pretty confusing history, I guess, is the best word I would
21  use to describe it in that he and his sister were both victims
22  of sexual and domestic abuse of his mother's partner.
23  Mr. Abraham then went to go live with his father and his
24  stepmother, and it appears from the records that they did
25  everything they could to get him intervention, to get him

1   treatment.  He was involved in two separate facilities in order
2   to assist him with dealing with that trauma.  Obviously, this
3   court should be concerned that here we are in this situation,
4   that the -- the earlier interventions did not suffice.
5        What I will tell you is this is a very significant prison
6   sentence for a 23-year-old young man.  The motivation for the
7   offense does not appear to be a salacious attempt to entice a
8   minor.  It appears to be motivated primarily by the age
9   disparity and the ability to maybe get affection more easily
10  than one could with a -- a peer or a young lady that is more
11  his age.  Mr. Abraham is very immature, he's been unable to
12  hold a job steady, and so he's not super appealing to young
13  ladies in their early 20s, and I think that that's how this
14  relationship built -- built itself in that the victim, who is
15  young, a little bit of an outsider, Mr. Abraham, who is older
16  and also a bit of an outsider, saw a common bond.
17       I don't know why the -- the minor victim's family chose to
18  not respond to requests.  It is both mine and I think
19  Mr. Abraham's sincere hope that she's getting the counseling
20  she needs.  From scrolling her -- through her information --
21  certainly I -- I don't blame her or anything -- but she -- she
22  definitely was interested in leaving her family home.  She was
23  not happy and I think from her point of view, this might have
24  been an answer to that unhappiness.
25       Mr. Abraham since he's been in custody has been a model

1   inmate.  He has, while available to him, engaged in treatment,
2   counseling.  While at Douglas County, he was in the God mod and
3   found some support through that.  Unfortunately, he's been
4   transferred to a couple of different facilities and they just
5   have not had programming available for him so he spent the
6   majority of his time reading and mentally preparing himself for
7   prison.
8       As the Court knows, having certainly had people appear in
9   front of you who've never been in a prison setting, it's a very
10  intimidating prospect for Mr. Abraham.  He is young.  He does
11  not have a lot of skills to defend himself and so I would ask
12  the Court to note that he would be in need of protection while
13  in a prison setting.
14      I'd ask the Court to note his interest and desire to
15  participate in both substance abuse and also
16  sex-offender-specific counseling.  His goal is do those things
17  and then also engage in some vocational training so when he
18  gets out he can be successful and so that he can comply with
19  the terms and conditions of supervised release.
20      So, Your Honor, we would ask you to go along with
21  the 11(c)(1)(C) plea agreement.  It was well thought out by all
22  the parties, it considered all of the circumstances, the
23  guidelines, and as well as my client's lack of criminal history
24  and lack of violence associated with this offense.
25      If you have any other questions, I'd be happy to address

1    them otherwise I'll submit.
2            THE COURT: Yeah. I would like to hear about the
3    AVAA assessment and why you don't think it applies and --
4            MS. STEENBOCK: I believe that it applies to
5    pornography offenses and Mr. Abraham was not convicted of that
6    offense. The specific offense he was convicted of is
7    18:2423(a) and that is not listed amongst the crimes that AVAA
8    applies to.
9        As to the JVTA, I do think that applies to him, but I
10   think he would qualify as indigent and so I'd ask the Court to
11   not impose that. The reality is, is that the victim didn't
12   respond for a request for restitution which I think would
13   wholly apply but they didn't request restitution. I don't know
14   why 'cause they certainly had expenses coming down here to
15   retrieve their daughter. I'm sure that she's involved in
16   counseling but we can't answer to that.
17       I will say that as far as the financial aspect of it,
18   Mr. Abraham is going to have expenses associated with
19   court-ordered treatment when he finishes his prison sentence.
20   I don't know what his earning capacity is going to be. I'm
21   going to assume, especially right out of prison, it's not going
22   to be great, and I think that it is in the best interests of
23   justice as well that this court not fine him as -- so that he
24   can spend his resources stabilizing his life and complying with
25   treatment requirements.

1    THE COURT: Is there any legal reason I can't fine
2    him?
3    MS. STEENBOCK: No.
4    THE COURT: Okay. Thank you.
5    Mr. Abraham, you do not have to speak but now is the time
6    for you to address the Court if you wish to say something
7    before I pronounce a sentence.
8    Would you like to say anything?
9    THE DEFENDANT: I'm really just -- I'm sorry and I
10    didn't mean any harm. That's it, Your Honor.
11    THE COURT: Okay. Thank you.
12    Before I hear from the government, I just would like to
13    make a comment on this case. Almost all little kids or -- or
14    kids in middle school and high school are on Snapchat. This is
15    a case where the defendant in Nebraska found a girl in
16    Pennsylvania on Snapchat, drove out and picked up a
17    15-year-old, drove her back to Nebraska. Within an hour of
18    picking her up, had sex with her. This is egregious conduct
19    and this -- and then he took pictures of her, of a child as
20    well.
21    This could easily be justified as a life sentence. This
22    is horrible conduct, and I just need to hear from the
23    government as to why this was pled to 150 months when literally
24    this would be a -- this could be a life sentence, and I believe
25    the Eighth Circuit would have no trouble affirming that. So

1	let's -- let's hear it.
2	                MR. KLEINE:  Sure, Your Honor.
3	     Your Honor, as this court -- as this court is aware that
4	Mr. Abraham is charged with the enticement, and the government
5	did determine, based upon the conduct and the evidence that we
6	have, that the guideline range in this case is 121 to 151
7	months.
8	     I don't believe there's evidence that the defendant took
9	photos of the victim but instead there were Snapchat
10	communications between the two where the victim sent -- or it's
11	alleged that the victim sent an image to the defendant.
12	     We didn't charge that conduct because there were issues
13	with that evidence.  That's why we're where we're at is because
14	to lay it out there, we can't get into his phone because of
15	certain technical issues that prevent us from being able to
16	establish that evidence, and had we been able to establish that
17	evidence, we would have charged it.
18	     We're not giving him a break because we feel sorry for
19	Mr. Abraham.  We're not giving him a break because we want to
20	give him a break.  Laying it out there on the record, we
21	charged what we could charge based upon the evidence that we
22	have.  And up until the point that this case was negotiated and
23	resolved, we still have not been able to get into his phone to
24	be able to establish that, in fact, he received child
25	pornography.

1       And so based upon the totality of the circumstances, we
2    believed that with a guideline range of 121 to 151 months, 150
3    months, at the high end of that guideline range, is reasonable
4    and that's why we agreed to that amount of time.
5       I am asking and I do agree with Probation's recommendation
6    of 30 years of supervised release and I think that is extremely
7    important as well given his background.
8             THE COURT:  Tell me this, I noticed in the plea
9    agreement that he could be subject to federal charges in other
10   jurisdictions.  Obviously, the -- the documents say he had sex
11   with her in Pennsylvania.
12            MR. KLEINE:  Correct.
13            THE COURT:  Could he be charged with having sex with
14   a 15-year-old in Pennsylvania as well?
15            MR. KLEINE:  I think he probably could be.
16            THE COURT:  Okay.
17            MR. KLEINE:  Now, again, federally there's the
18   Department of Justice issues which are called the Petite Policy
19   and things of that nature, but I think that -- yeah, I think he
20   could be charged in any state where that criminal activity
21   occurred.
22            THE COURT:  Okay.  Thank you.
23      I -- After reviewing the underlying facts and hearing
24   from the prosecution, I very reluctantly accept the plea
25   agreement.  Let me just say that this is a nightmare.  This is

1   horrible conduct and, you know, I want to tell you,
2   Mr. Abraham, without the -- the work of your lawyer, you
3   literally could have ended up potentially in jail for the rest
4   of your life for doing this.  You were 22 years old at the
5   time.  You know you can't go to Philadelphia and pick up a
6   15-year-old and go have sex with her.  There isn't anyone with
7   a brain who doesn't know you can't do that.
8        This justifies a life sentence and -- and in federal court
9   a life sentence means a life sentence.  It means you never get
10  out of jail.  That's what it means.
11       Is there any legal reason sentence should not now be
12  pronounced, Mr. Kleine?
13           MR. KLEINE:  No, Your Honor.
14           THE COURT:  Ms. Steenbock.
15           MS. STEENBOCK:  No, Your Honor.
16           THE COURT:  In crafting this sentence, I have
17  considered all factors outlined under 18 U.S.C. Section
18  3553(a), including general deterrence, specific deterrence,
19  protection of the public, the need to avoid unwarranted
20  sentencing disparities and the specific history and
21  characteristics of the defendant.
22       The Court has also considered the seriousness of the
23  conduct, the need to promote respect for the law and the need
24  to provide just punishment for the conduct at issue.
25       Recognizing that the guidelines are advisory in nature and

1   following the parameters of the Rule 11(c)(1)(C) plea
2   agreement, I hereby sentence the defendant, Mitchel D. Abraham,
3   to a term of 150 months of incarceration.
4       Related to incarceration, I recommend the following:  That
5   the Bureau of Prisons allow the defendant to participate in a
6   500 intensive -- 500-hour intensive drug treatment program or
7   any similar and available drug treatment program if the
8   professionals at the Bureau of Prisons find such programming to
9   be appropriate; the defendant receive educational or vocational
10  training in accordance with past skills and education; that the
11  defendant receive or participate in sex offender treatment.
12      With regard to location of incarceration, is there a
13  recommendation from the defendant?
14          MS. STEENBOCK:  Englewood.
15          THE COURT:  I will recommend Englewood.
16      Upon the release from prison, the defendant shall be
17  placed on 30 years of supervised release.  I intend to follow
18  the mandatory and special conditions of supervised release set
19  out in the Sentencing Recommendation.
20      Do the parties have objections to any of these conditions,
21  Ms. Steenbock?
22          MS. STEENBOCK:  No, Your Honor.
23          THE COURT:  Mr. Kleine.
24          MR. KLEINE:  No, Your Honor.
25          THE COURT:  The special and mandatory conditions are

1    ordered.  The standard conditions of supervised release are
2    also imposed.
3         I am not going to impose a JVTA assessment because the
4    Revised Presentence Investigation Report indicates the
5    defendant appears to be indigent.  I am not going to impose a
6    fine under AVAA given Ms. Steenbock's argument with regard to
7    that.
8         What's happened recently is we've had the federal
9    government writing checks to those people in federal prison for
10   some reason, and given that and -- the fact that that could
11   happen and given the fact of the age of the defendant when he
12   receives [*sic*] from jail, I am going to fine him $10,000.  That
13   is an amount that anyone at the age that the defendant is
14   released from jail will be able to work off and pay at that
15   point in time.  Get --  With any job that you have, that could
16   happen so I am going to issue that fine.  Also, if -- if the
17   government decides again to write checks to those in federal
18   prison, the -- the amount the government gives could be
19   utilized to pay part of this fine given the circumstances.
20        I'm not going to order restitution because the victim has
21   not asked for any restitution.
22        The $100 special assessment will be imposed.
23        The defendant should be given credit for any time served
24   and shall cooperate in the collection of a DNA sample at the
25   direction of the probation officer or the Bureau of Prisons if

1    that has not already occurred.
2           That is my judgment and sentence in this case.
3           Mr. Abraham, you limited your right to appeal in your plea
4    agreement.  With regard to any remaining right to appeal, you
5    could ask to proceed with the fees and costs waived.
6           If you have any questions about that limitation or about
7    any remaining right of appeal, you should discuss that matter
8    with your lawyer.
9           Mr. Abraham, I will note that you are now on -- after
10   you're done with your sentence, you will be on 30 years of
11   supervised release.  There is a very significant chance that I
12   will still be on the bench a good portion of that 30 years, and
13   if you get in trouble again, you will come back and see me, and
14   I will trust you -- I will remember today and I will remember
15   the unbelievably good deal you just got today.
16          So I hope I never see you again, and I'll even remember 15
17   years from now when this is all -- when you're out -- out there
18   again so that's what I'd like to say so the defendant is
19   remanded --
20          Yes, go ahead.
21          (An off-the-record discussion was had between the
22   courtroom deputy and the Court.)
23              THE COURT:  And I'm going to waive interest on the
24   fine as well just to make it easier for the government to keep
25   track of that so there will be no interest on the fine.

17

1  So the defendant is remanded to the custody of the marshal
2  to be delivered to the Bureau of Prisons.
3  Is there anything further from the United States?
4  MR. KLEINE:  No, Your Honor.
5  THE COURT:  Anything from the defense?
6  MS. STEENBOCK:  No, Your Honor.
7  THE COURT:  We are adjourned.
8  (Adjourned at 11:01 a.m.)
9
10  * * * * * * *
11
12
13  I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.
14
15  /s/Rogene S. Schroder                    October 19, 2021
    Rogene S. Schroder, RDR, CRR                  Date